VILLANTI, Judge.
Travis Rodriguez James seeks review of the revocation of his probation and the resulting sentence, arguing that the State failed to prove that he was ever properly *619 advised that he was on probation and that therefore he could not have willfully violated his probation. Because the undisputed facts bear out this assertion, we reverse the revocation of James’s probation and remand for James to be released in this case to serve the remainder of his probationary sentence.
On June 30, 2009, James entered guilty pleas in;four separate cases. In three of those cases, he was sentenced to twenty-eight months in prison, with all of the sentences to run concurrently with each other. In the fourth case — the one at issue here — the trial court orally sentenced James to a consecutive term of five years’ probation. However, the written judgment and sentence rendered by the trial court, through a scrivener’s error, erroneously imposed the probationary sentence in this case concurrently with the prison terms.
According to James, upon his release from prison on November 25, 2010, he reported to the probation office to begin serving his probation in this case. However, at the probation office, James was told that his probation in this case had been terminated. Both James and his father testified that they were given this same information at three separate probation offices. Moreover, in a motion filed in the trial court, the State admitted that James “was never supervised due to a clerical error.” Nevertheless, on March 31, 2011, the Department of Corrections filed an affidavit alleging that James had violated his probation by committing a new offense and by failing to pay certain monetary obligations.
At the revocation hearing, despite its earlier admission that James was never supervised, the State asserted that James “knew” that he was on probation and “knew” that committing a new offense would be a violation of that probation.
However, the only evidence presented by the State to establish that James had ever been advised of the conditions of his probation was hearsay. Further, the State presented no evidence to rebut James’s testimony that he was explicitly told by employees of the Department of Corrections that his probation had been terminated. Nevertheless, the trial court revoked James’s probation based on his willful violation of its conditions. James now seeks review of that revocation.
Before a trial court may revoke a defendant’s probation, the State must prove by the preponderance of the evidence that the defendant willfully violated a substantial condition of his probation. See, e.g., Tirado v. State, 69 So.3d 1005, 1006 (Fla. 2d DCA 2011); Lynom v. State, 816 So.2d 1218, 1221 (Fla. 2d DCA 2002). In Adickes v. State, 712 So.2d 815, 816 (Fla. 5th DCA 1998), the Fifth District reversed a revocation of probation when the evidence showed that Adickes had been explicitly told by the Department of Corrections that he was not on probation despite his belief to the contrary. In doing so, the court noted that this evidence did “not support a finding of willfulness.” Id.
In this case, as in Adickes, the only evidence presented at the revocation hearing was that James was told by Department of Corrections employees at three different probation offices that he was not on probation despite his belief to the contrary. While the State in this appeal challenges the veracity of James’s testimony, it admitted in its own pleadings that James was never supervised due to a “clerical error.” And while the State did offer hearsay testimony that James was advised of the conditions of his probation by an unidentified “court officer” at his original sentencing hearing, this hearsay evidence, standing alone, was legally insufficient to *620 support the revocation of James’s probation. See, e.g., Russell v. State, 982 So.2d 642, 646 (Fla.2008) (holding that while hearsay evidence is admissible at a revocation hearing, revocation may not be based solely on hearsay evidence); Johnson v. State, 962 So.2d 394, 396 (Fla. 2d DCA 2007) (same). Moreover, even if that hearsay evidence was legally sufficient, it does not rebut James’s testimony that he was told by the Department upon his release from prison that he was not, in fact, on probation. Thus, on this record, there is simply no evidence upon which the trial court could rely to find that James willfully violated his probation.[1]
On appeal, the State’s only argument is, in essence, that it would have been “too hard” to disprove James’s claim that three Department employees told him that he was not on probation. The State argues that because James failed to appear for probation, no one could be called to rebut his testimony. However, the State did not allege in its affidavit of violation of probation that James failed to report for probation, and thus this alleged failure to report cannot support revocation of James’s probation. See Lee v. State, 67 So.3d 1199, 1201 (Fla. 2d DCA 2011) (holding that “[a] trial court is not permitted to revoke probation on conduct not charged in the affidavit of violation”) (quoting Cherington v. State, 24 So.3d 658, 660 (Fla. 2d DCA 2009)). Moreover, the State failed to call even the “court officer” who allegedly instructed James on the conditions of his probation at his sentencing hearing to establish that James “knew” that committing a new offense would be a violation of his probation. And, contrary to the State’s argument, it is not relieved of its burden to prove that James violated his probation simply because the necessary evidence would be “too hard” to obtain. Hence, since the State failed to prove that James willfully violated his probation, we must reverse the revocation of that alleged probation.
We note that during the pendency of the violation of probation proceedings, the trial court entered a corrected judgment and sentence that conformed the written judgment and sentence to the original oral pronouncement. Thus, the scrivener’s error in the written judgment and sentence that presumably gave rise to the Department’s confusion has been corrected. Accordingly, on remand, James should be released from prison in this case to serve the remainder of his probationary term.[2]
Reversed and remanded.
WHATLEY and KELLY, JJ., Concur.

. There is an “Order of Probation" in the court file that places James on probation and sets out the conditions of his probation. That order was signed "nunc pro tunc” to June 30, 2009. However, it is apparent from the order itself and the entire record in this case that this order, which was rendered on March 24, 2011, was signed after the affidavit of violation of probation at issue here had already been filed. Thus, it cannot constitute evidence that James knew of or was advised of the conditions of his probation either at his original sentencing in June 2009 or upon his release from prison in November 2010.

. In the affidavit of violation of probation in this case, the Department alleged that James had violated his probation by committing a new offense. Our record does not include any documents concerning whether James was ever charged with that alleged new offense or what, if any, sentence he may be serving for that offense. Accordingly, we note that our direction that James be released back to probation in this case relates solely to his *621 imprisonment in this case and may not result in his actual release from prison at this time if he is being held on a new charge or sentence.